**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Crim. No. CCB-10-364 |
| | * | |
| DONTA SPRIGGS | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM**

Donta Spriggs is a forty-year-old federal prisoner, currently incarcerated at Philadelphia, serving a 210-month sentence for possession of a firearm in furtherance of a drug offense. Now pending is Spriggs's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (ECFs 36, 39). Spriggs seeks relief based on underlying health conditions making him particularly susceptible to serious illness related to COVID-19. The government opposes the motion, (ECF 46), and Spriggs has replied, (ECF 47). For the reasons explained below, the motion will be granted and Spriggs's sentence will be reduced to time served, followed by a five-year term of supervised release, of which twelve months will be served on home confinement.

**BACKGROUND**

On February 18, 2010, Baltimore City police responded to a report of an "armed person" in a Jeep on the 1700 block of East Preston Street. When police arrived at the block, they located the vehicle and identified Mr. Spriggs, the owner of the vehicle, across the street. Police approached Spriggs, who acknowledged that he was the owner of the vehicle and gave the officers permission to search the vehicle and his person. Police recovered from Spriggs's person a firearm and thirty-five vials of cocaine base. (ECF 20, Plea Agreement ¶ 6). In June 2010, after the state of Maryland declined to prosecute Spriggs and he was released into the community, the United States indicted Spriggs for possession with intent to distribute cocaine, possession of a firearm in furtherance of drug trafficking, and felon in possession of a firearm. (ECF 1). Spriggs was released pending trial, (ECF

1

10), and in September 2010 he pled guilty to one count of possession of a firearm in furtherance of a drug offense, in violation of 18 U.S.C. § 924(c). Spriggs had a criminal record that included three prior drug distribution offenses, meaning that he faced the Armed Career Criminal Act's fifteen-year mandatory minimum sentence, a consecutive five year sentence under § 924(c), and a career-offender designation under the sentencing guidelines. He pled guilty pursuant to Fed. R. Crim. P. 11(c)(1)(C) and agreed that a sentence of 210 months was an appropriate disposition in order to avoid the risk of a much longer term of incarceration if he proceeded to trial. He was permitted to voluntarily surrender to the custody of the BOP. (ECF 27, Judgment).

In December 2018, Congress enacted the First Step Act. *See* Pub. L. No. 115-391, 132 Stat. 5194. As part of the Act, Congress amended 18 U.S.C. § 3582(c), which empowers courts to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239. Before the First Step Act was enacted, a court could review a prisoner's sentence pursuant to § 3582(c)(1)(A) only "upon motion of the Director of the Bureau of Prisons" ("BOP"). *Id.* But under the amended statute, a court may conduct such a review also "upon motion of the defendant," if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if thirty days have lapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" *Id.* The court may authorize compassionate release if, after considering the factors set forth in 18 U.S.C. § 3553(a), the court finds that "extraordinary and compelling reasons" warrant it. *See* 18 U.S.C. § 3582(c)(1)(A)(i).

Spriggs submitted a request for compassionate release to the warden of FCI Fort Dix on February 5, 2021; his request was denied on February 17, 2021. (ECF 46-3). The government does not contest that Spriggs has properly exhausted his administrative remedies. Thus, the only issues are

(1) whether "extraordinary and compelling reasons" warrant the reduction of Spriggs's sentence and (2) if there is such a reason, whether the § 3553(a) factors weigh in favor of a sentence reduction.

## DISCUSSION

Under 28 U.S.C. § 994(t) the United States Sentencing Commission has the responsibility to define "what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A). The most recent Sentencing Commission policy statement defining "extraordinary and compelling reasons" for sentence reduction, Guideline § 1B1.13, predates the First Step Act and, as the Fourth Circuit recently held, is not a policy statement that applies to motions for compassionate release brought by defendants, because its plain text "constrains the entire policy statement to motions filed solely by the BOP, . . . and not by defendants themselves." *United States v. McCoy*, 981 F.3d 271, 281–82 (4th Cir. 2020) (internal quotation marks and citation omitted). In the absence of an "applicable policy statement[] issued by the Sentencing Commission" concerning what may be an "extraordinary and compelling reason" for compassionate release when a defendant brings a motion under § 3582(c)(1)(A), "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)).

Spriggs argues that his risk of developing serious illness related to COVID-19 due to his underlying medical conditions (obesity, hypertension, and risk of heart disease) constitutes an "extraordinary and compelling reason" to reduce his sentence. According to the Centers for Disease Control ("CDC"), obesity, hypertension, and other heart conditions "can make you more likely to get severely ill" (meaning hospitalization, intensive care, the need for a ventilator, or death) from COVID-19. *COVID-19: People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated Apr. 29, 2021). The CDC has also warned that "[t]he risk of severe COVID-

19 increases as the number of underlying medical conditions increases in an individual[,]" *COVID-19: Underlying Medical Conditions Associated with High Risk for Severe COVID-19: Information for Healthcare Providers*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (updated Apr. 30, 2021), and the mere fact of his incarceration also compounds Spriggs's risk. *See Coreas v. Bounds*, 451 F. Supp. 3d 407, 413 (D. Md. 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *COVID-19: For People Living in Prisons and Jails*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/living-prisons-jails.html (updated Mar. 5, 2021) ("Living in prisons and jails puts you at higher risk for getting COVID-19 because: it may be hard to stay at least 6 feet away . . . from other people; there may not be enough space to keep people with COVID-19 away from others; you may be sharing space with someone who has the virus and does not know it . . . ; staff or visitors may have the virus and not know it."). The government does not contest that Spriggs's medical conditions are an extraordinary and compelling reason for his release, but argues that those circumstances are substantially mitigated because Spriggs has received at least one dose of the coronavirus vaccine.

Spriggs's vaccination status does not greatly decrease the court's concern that his medical conditions increase his risk of severe illness due to COVID-19. While clinical trials for both vaccines with emergency use authorization have shown that the vaccines "are effective at keeping you from getting COVID-19," *see Key Things to Know About COVID-19 Vaccines*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/keythingstoknow.html (updated Apr. 28, 2021), its effectiveness is not guaranteed; nor are its protections immediate. "It typically takes two weeks after vaccination for the body to build protection (immunity) against the virus that causes COVID-19[,]" *id.*, meaning that Spriggs remains, at this writing, at risk of severe illness, and it is not clear whether he has received a second dose of the vaccine. Additionally, there is much more for experts to learn about "how effective the vaccines are against new variants of the virus that causes

COVID-19." *Id.* If Spriggs has received a second dose of the vaccine, it will likely provide him

protection, and the court will take that fact into account when balancing his risk of illness with the

§ 3553(a) factors, but the fact that he received a vaccine does not negate that his underlying health

conditions make him eligible for compassionate release. To conclude otherwise would ignore the

remaining unknowns about the protection the vaccine can provide and would create a perverse

incentive for prisoners like Spriggs who seek compassionate release on the basis of medical

conditions to decline the vaccine for fear it would preclude relief. Presenting prisoners with such a

choice is dangerous not only to their health but also to the people with whom they are incarcerated

and to BOP staff.[1]

Spriggs's risk of severe illness from COVID-19 does not, however, end the court's inquiry.

The compassionate release statute provides that, before reducing a defendant's sentence for

"extraordinary and compelling reasons," the court must consider the factors set forth in 18 U.S.C.

§ 3553(a) "to the extent they are applicable." *See* 18 U.S.C. § 3582(c)(1)(A).

The government opposes Spriggs's release under the § 3553(a) factors primarily on the basis

that Spriggs's history of recidivism demonstrates that he must serve out the remainder of his sentence

in order to protect the public and to deter Spriggs from further criminal activity. *See* § 3553(a)(2)(B)–

(C). Without minimizing Spriggs's prior criminal conduct, the court considers it alongside his post-

---

[1] The government also argues that Spriggs is not eligible for compassionate release unless the court finds him not a danger to the community under 18 U.S.C. § 3412(g), citing U.S.S.G. § 1B1.13, which advises that in order to reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A), the court must determine (1) extraordinary and compelling reasons warrant the reduction, (2) the defendant is not a danger to the safety of any other person or to the community as provided in 18 U.S.C. § 3142(g), and (3) the reduction is consistent with the U.S.S.C.'s policy statements. But as stated supra, U.S.S.G. § 1B1.13 applies only to motions for sentence reduction brought on behalf of defendants by the BOP and thus is not applicable to Spriggs's motion. *See McCoy*, 981 F.3d at 281–82; *United States v. Kibble,* 992 F.3d 326, 330–31 (4th Cir. 2021). At any rate, in addressing the § 3553(a) factors, the court considers the need for the sentence to "protect the public from further crimes of the defendant," see 18 U.S.C. § 3553(a)(2)(C), an inquiry which implicitly requires the court to assess Spriggs's danger to the community.

sentencing conduct, which "provides the most up-to-date-picture of [his] 'history and characteristics.'" *See Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)). As explained above, Spriggs's conduct was serious and his criminal record is significant. None of Spriggs's convictions, however, involved allegations of violence or the possession of firearms, and all of them occurred more than fifteen years ago, when Spriggs was in his late teens or early twenties. (ECF 46-7, Presentence Report ¶¶ 16–25). All three of his prior drug distribution offenses stem from law enforcement observing Spriggs engaging in a single, street-level, drug transaction; he has never been charged as part of a larger trafficking organization or conspiracy. (*Id.*). Spriggs cumulatively served only three years in prison for these offenses. (*Id.*). Contrary to the government's contention that Spriggs "has been a drug dealer for most, if not all, of his adult life," his history includes sustained periods of employment from 2006 to 2010. (*Id.* ¶¶ 46–48).

Spriggs has shown considerable rehabilitative efforts while in the BOP. He has earned his GED and has completed over thirty courses. (ECF 39-2, BOP Progress Report at 1–2). His institutional record shows he has incurred eight, mostly minor, disciplinary infractions while incarcerated, the most serious of which were for possessing alcohol, and he has now been discipline-free for over two years. (ECF 39-3). His most recent BOP progress report indicated he was submitted for a transfer to FCI Fort Dix's low security camp, but it appears he has since been transferred to FDC Philadelphia. This institutional record does not reveal Spriggs as likely to reoffend, and Spriggs has a demonstrated history of doing well on pretrial release. He remained in the community without incident prior to his sentencing in this case and was permitted to voluntarily surrender. If released, Spriggs plans to live with his long-time partner, now fiancé, and his son, with whom he appears to have maintained a strong relationship throughout his incarceration. Spriggs has now served more than a decade in prison, by far his lengthiest prison term after serving largely suspended sentences for his prior convictions. After reviewing his history, and considering also that Spriggs will serve five years

on supervised release, the court is persuaded that accelerating Spriggs's release poses a minimal risk to the community and is sufficient to provide just punishment for the offense and to deter further criminal conduct. *See* 18 U.S.C. § 3553(a)(2)(A)–(C).

The court also considers the applicable guideline range and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. §§ 3553(a)(4), (a)(6). In this case, these factors are at odds with each other to some extent. Spriggs acknowledges that the career offender designation would still apply to him today; thus, his guideline range remains 262 to 327 months, and the 210 months Spriggs agreed to in 2011 is still below that range. At the same time, federal sentencing statistics over the last ten years demonstrate that the sentence he received is considerably higher than the majority of sentences for similar § 924(c) convictions. For example, in 2016, the average sentence length for a defendant convicted only under 18 U.S.C. § 924(c) was 99 months, s*ee* Mandatory Minimum Penalties for Firearms Offenses in the Federal Criminal Justice System, at 32, available at https://www.ussc.gov/sites/default/files/pdf/research-andpublications/research-publications/2018/20180315_Firearms-Mand-Min.pdf, and between 2016 and 2020, the average sentence length for a defendant in Spriggs's criminal history category, evaluated under his same guideline provision, § 2K2.4, (*see* ECF 46-7, Presentence Report ¶ 13), was 107 months, *see* United States Sentencing Commission, Interactive Data Analyzer, Average and Median Sentence Length, 2016–2020, Guideline § 2K2.4, Criminal History Category VI, https://ida.ussc.gov/analytics/saw.dll?Dashboard (last accessed May 7, 2021). Spriggs argues this marked disparity is largely due to the discretion the U.S. Attorney has exercised more heavily in recent years to make plea offers to career offenders that are significantly below the guidelines. The court agrees that Spriggs's sentence was unusually lengthy compared to similar offenses, particularly given the age of his prior convictions and the fact that none of them involved violence.

Based on the above considerations, and in light of the principle that a sentence should be "sufficient, but not greater than necessary," *see* 18 U.S.C. § 3553(a), the court finds that the § 3553(a) factors weigh in favor of reducing Spriggs's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). This, combined with the "extraordinary and compelling" risk to Spriggs of severe illness from COVID-19 should he remain in prison, leads the court to conclude that Spriggs is entitled to compassionate release.

## CONCLUSION

For the foregoing reasons, Spriggs's motion for compassionate release (ECFs 36, 39) will be granted and his sentence will be reduced to time served. The associated motions to seal (ECFs 40, 45) will be granted to protect the confidentiality of personal information.

The terms and conditions of supervised release to which Spriggs was sentenced will remain in place, with the additional condition that Spriggs will spend the first twelve months of supervised release on home confinement, to be monitored by U.S. Probation, using location monitoring technology at the discretion of the Probation Officer. For the twelve-month home confinement period, Spriggs shall not leave the address approved by U.S. Probation except for activities approved in advance by U.S. Probation. In addition, he will be required to comply with all directives of federal, state, and local governments related to public health issues, including COVID-19.

A separate order follows, which will be stayed for up to fourteen days to make appropriate travel arrangements and to ensure Spriggs's safe release, including by placing Spriggs in quarantine for a period of fourteen days and to evaluate him for the purposes of receiving a medical clearance.

    5/10/2021                                    /S/
Date                                             Catherine C. Blake
                                                 United States District Judge

8